Next case is number 2011-12-58 LENS.COM against 1-800 CONTACTS Next case is number 2011-12-58 LENS.COM against 1-800 CONTACTS Next case is number 2011-12-58 I am here on behalf of LENS.COM and I can't if I can I'd like to talk about just briefly about the background of this case and how it got here because I think that's as interesting as some of the issues that we've got to go over today. The appellant LENS.COM acquired a trademark registration for the mark LENS for a piece of software. They acquired this registration from a company called Wesley Jessen and Wesley Jessen used to distribute this software to its customers on a diskette, I believe, and they would put it in their computers, this was before the internet, and they would put it, the customers would put it in their computers, presumably type in LENS on their computers at that time using possibly DOS, that was around the period this was being distributed. Did anyone ever find that the distribution of the tangible software on a disk was not a use in commerce of the trademark? I don't believe it was ever alleged. So it's the electronic age that made the change? Exactly, which caused, they, for whatever reason, discontinued using their software. We went to register this mark and we found they had abandoned their mark, essentially, or were going to abandon it, and they discontinued their software, and so we got their registration and they assigned it to us. I guess my concern is whether or not it's being used in commerce when you simply have an automated payment processing system for the purchase of the LENSes, and the reason I worry is because if I were to find in your favor, it would seem that every single internet sale by every single internet purveyor of any good at all would arguably also be entitled to a software trademark, because every system uses some form of automated sales on the internet, whether it's buying from a toy store, Amazon.com, a bookstore, LENSes, any, but they all use software, they do, to process. They all use software, but they all don't use automated payment systems. For example, Google, which is relevant in this particular case, doesn't sell anything on the internet. Okay, but every person who does sell something on the internet, and that number is exorbitantly large, would then be entitled to a trademark on whatever software their system is using to process that payment, even though nothing tangible is being delivered into the hands of the purchaser, so there's no knowledge of the purchaser associating a payment process with a particular source of goods or anything like that. It just seems way too broad, so I'd like to hear your thoughts. Yeah, I disagree with you, and here's why. Number one, if that were really true, anybody who provided, well, everybody who did provide software before the internet, which provided for order entry of contact LENSes or anything else, had got a registration for software. The difference here is, our site takes a registration for software and payment, but the reason I don't think we have to worry about that... Well, you're not selling the software, you're just using the software to process the orders, correct? Correct. Right. Neither did Wesley Justin. They didn't sell the software, they gave it to their customers as free. So the goods in trade that your client is involved with, under this mark, are the LENSes that are sold, not the software. Correct? Exactly. Isn't that a problem for you? No, Your Honor, if I can explain, I was trying to get to that point. The point is, in fact, we were denied registration because the board summarily concluded that customers were not aware of the use of the mark in conjunction with their purchase. Now, I would suggest to you that there are many, many, many websites out there where in conjunction with the software that they're making their purchase with, so they don't recognize the mark as a mark for the software. And that's essential, and that's the point I believe you were asking, Your Honor. That's the difference between us and a lot of other people. But while the board said that LENS.com had actually, they called it abandonment, they took another step. They said that since customers had no awareness that this mark LENS was being used in conjunction with the software, that at whatever point, presumably, we went to the website, which is when we acquired, or had the mark assigned to us, presumably at that point they were saying that we worked, that abandonment was work. Now abandonment wasn't work because that's an intentional act. And the board had in fact accepted our specifications several times since then, so they apparently were happy with our use. But the real problem there is if the issue, if it's going to be said that we abandoned our mark because the customers were not aware that LENS was being used in conjunction with software, then I think some evidence needs to be presented to that fact. But the board summarily concluded that on their own belief, if you will, without any evidence, and neither did the petitioner, 1-800-CONTACT, present any evidence of that. We on the other hand did present evidence. We had customer testimonials that said, I really like your software, I mean I can read some of them, but I think they're in the record, wow, I was very well pleased with being a first-time customer. I was impressed with the thoroughness of the site, how easy it was to order exactly what I wanted. Wonderful ordering, easy ordering experience. We had an expert, Mr. McCreary, testify that this is important for websites now, that customers have to recognize your software on a website and they have to stand out because that's really how you're competing with other people on the internet that may be taking orders. So software becomes the important thing really, one of the most important things that you're giving the customer. And the expert testified that he believed, in essence, that the customers did like the software, did recognize software as part of their, part of the lens mark, because they had to type in lens to get there first of all, but then they really took note of the developing this particular software. And so if the customers did in fact recognize it, then we should be given our mark, but there was no evidence presented that the customers didn't recognize it, and they have a duty to present that if they're going to take the mark from us on that basis. Isn't the software here simply the vehicle used to sell the lenses, and that the goods in trade are really the contact lenses and not the software used to facilitate it? Well, like many websites now, what we're finding is, in fact, that the PTO has given out numerous registrations for software for websites. So they recognize the fact already that, for websites that sell things, okay, so they recognize the fact that there may be numerous goods in trade for a particular mark, and we see repeatedly... But that would be where, for example, a service is being rendered on the website, that, you know, you could have registered this for, aside from the descriptiveness problem, for contact lenses sold on the internet or the services of offering for sale contact lenses used in the internet. We have a number of applications in place for being pursued, actually. So all of those things, but that... May be proper, right. Those raise different questions. So the question here is whether there is anything to suggest that the software is simply incidental to the trade involved of selling lenses, or the rendering of services involving lenses, but that you're not really engaged in the trade of distributing software. Well, your honor, if I may, I think that's another way of asking whether the customers recognize it as something separate. And we intend it to be something separate because we devote... You're on the internet, and the thing that distinguishes you from everybody else is the software that gets downloaded to their browser when you come to that particular website. I mean, what's to distinguish us, for example, from 1-800-CONTACT when you go to their website? Yeah. I think you're talking about the service rendered over the internet, the service of offering contact lenses for sale over the internet. And certainly the mark, you may very well be able to argue that the mark distinguishes your offering of lenses over the internet from somebody else's services. Certainly. But that's a service mark in connection with the service, not a trademark in connection with the good being software. Yeah. And again, I agree. In this case, as with 1-800 and numerous other businesses on the internet, there are multiple marks that can be pursued under different classes and they're all available to the registrant. This is one that was available not only to Wesley Jesselin, but should be available to us. Because there's really not any difference between what we're doing and what Wesley Jesselin did, other than they provided the customer with the software on a disk and we provide it downloaded to their computer via their browser. It's still order entry software. Ours is much better. Obviously, it's newer. They didn't have the technology then they have today. But theirs was for providing software to allow the customer to purchase their contact lenses and such. And your argument applies to them also. And if it's improper to us, then it was improper to them. But the PTO didn't find it that way. And they never found it that way, given the multiple reviews of our specimens we submitted and the renewal process. Do you want to save some rebuttal time? Yes. Yes, Your Honor. Thank you. Let's hear from the other side. Mr. Miller. Thank you, Your Honors. May it please the court. I'm Mark Miller. I represent 1-800-CONTACT, the AFLE. And I think a little background is a great place to start. The question is, why are they pursuing this registration? And I think, Your Honor, Judge Lynn identified it in one of his questions. They're not pursuing it. They have it. Well, why are they trying so hard to maintain it? They tried to get a registration. It's an incontestable trademark. Why should they give it up if there are any advantages to having it? I mean, you're saying, why don't they just give up and deem it abandoned? Well, not necessarily. Why don't they just give up? I'm trying to say, why did they get it in the first place? And the reason is, they filed an application for their real business, which is services, online retail services. It got rejected. It got rejected because Lenz is generic or descriptive of the products they're selling as a retail store. They weren't entitled to such a generic term. So they want to circumvent the rule against genericness. They sue Wesley Jessen. They say Wesley Jessen abandoned this. But then to settle that claim, they say, well, we'll forget about the evidence or our our understanding that you discontinued distributing software. It's been a bad history. The office after the routine rejection that Lenz is generic granted them the mark they pursued and enforced the mark. It's now incontestable. So in terms of their motivations, I think let's set that aside and discuss the merits of the issue in which it was decided. OK. And just for correction, the office didn't ultimately grant their application. Their application was denied. They just under a settlement agreement, acquired an assignment of this registration from Wesley Jessen. It was examined in the office and it was granted. And then there was refiling and it was allowed again, right? Correct. And abandonment is an appropriate way to cancel even an incontestable trademark. If right. And if you prove that the use that they're claiming they're making of it does not constitute a use in commerce for goods, then it's abandoned. Well, you can't stop them from using it. You may get the registration canceled. Exactly. And we're not asking them that they can't continue to use Lenz in connection with their online store, but they can't get a registration for Lenz in connection with software in class nine. They're not in the software business. They don't give consumer software. They use software to sell contact lenses. I think a great distinction to make. The word Lenz to sell software. Excuse me. Do you want to use the word Lenz to sell software? Is that why your client is pursuing this? No, my client's pursuing this because what Lenz.com wants to do is if they get a registration for Lenz, it's almost like we don't care the goods or services. We want a registration because there's there's other district court litigation between the parties. They wanted something they could use to assert your your advertising on Google when somebody searches the generic term Lenz. We they wanted a chip to play as a counterclaim. So they sought this registration. And that's all kind of underlying history. And they would use it. And and for the broad scope they're seeking, what they want this court to say is if if they were to get this registration revived and have this registration simply as an online retailer in class nine for software, they could sue any online retailer. What do you mean by revived? It's not dead? Well, I'm just saying that because the board canceled it. So its current status has been canceled by the board pending appeal to this court. And so if they were to get this, then they could they could sue any online retailer who uses the word Lenz, the generic descriptive term Lenz in connection with selling contact lenses. And then they say, well, we don't provide consumers with software. The defendant could say we don't give software. Lenz.com says you have an online order form, a computerized software order form that the consumers use. And you're using Lenz. And so it gives them protection they're not entitled to. Now, in on page, the registration might give them some procedural advantages, but their their position, their posture with respect to the word Lenz as a trademark vis-a-vis third parties is is really no different with or without the registration, ignoring the procedural benefits of a registration. And so your your argument is, oh, they need to get this registration because then they can go out and start beating up everybody else. It's not entirely accurate. No, but it does give them the procedural benefits they're not entitled to. They have some procedural benefits. But apart from that, in every one of these cases, they would have to either they'd have to sustain a trademark infringement action on the merits of likelihood of confusion, et cetera, et cetera, regardless of whether there's a registration or not. And when you don't have a registration, it's less likely they're going to go out and try to assert that common law right when if they were actually distributing software on old fashioned floppy disks, sending it to every potential customer. Would you agree that they are then transporting the good in commerce because the software is going out and the software would enable people to then make the purchase of the lenses? Your Honor, I'm not I know that that's the basis on which Wesley Jessen was granted the registration. You're asking us to say that you can't get a trademark on software. So I'm not going to let you skirt the question at all. So sure, I don't want to skirt the question. I'm saying I disagree that that should be an acceptable use where what it is, it's akin to the cases where the company simply provide here's an ordering kit. There's case law we cite in our brief where the company provides all their customers a free ordering kit, has an order form, has a return address, it has a catalog and all that. They tried to get a registration on that ordering kit as a good, a trademark rather than a service mark. And they were denied that because it's merely incidental to their real business of selling the goods that they sell. And so I would disagree that works. But even if you say that what Wesley Jessen did by providing software, by physically providing them a copy of software that they install on their computers, even if that's enough to support registration, that doesn't translate the way Mr. D'Ghidio is saying that now when you have an online store, it's the same thing. It's not the same thing. Online stores do not provide consumers with a piece of software. Consumers access their website and they can purchase things, but they are not gaining software from that consumer, I mean, from that seller as merchandise. Isn't there some download of software onto their machine, even if they're oblivious to it? Well, they allege that there is a download of the only thing that they say from the owner and operator of blends.com is a component. Their expert says every online store downloads a cookie or an applet. And what those are, are little data pieces so that the next time that computer accesses their website, they recognize the computer. They know who it is, they know their habits, and so they can customize the service. But all that is, is something they're utilizing to enhance the services they provide. It's not an open and public offering or transfer of goods. It would be akin to Gold's Gym that offers, you know, exercise services. What if Gold's Gym went out and without letting their customers know, they placed little GPS trackers on all the cars, and then they tracked where they go and their habits and where they stay so that they can enhance the service and advertising they provide. Could Gold's Gym then get a registration for Gold's Gym GPS units? When nobody would associate Gold's Gym as a source of GPS trackers. Your argument is awareness is the key. Open and public is the case law, and I guess that translates into awareness. How about TurboTax? TurboTax, you can purchase software that will assist you in preparing your tax returns. Is TurboTax engaged in the sale of software, or are they providing the service of assisting in the preparation of tax returns using the vehicle of software? If the only way TurboTax operated was you go on their website, you fill it out, and the software on their servers processes everything for you, I would say they are only entitled to a service mark. But TurboTax does more than that. You can go to Costco, you can buy a TurboTax box, you can install that software on your computer, you now own that copy of the software, and you can use it that way too. So they are both. Similarly, you can do that online and just download the software without purchasing anything. But you can. Without physically obtaining anything. Correct. You can in some circumstances, not with Lens.com, and that's an important distinction. If you look at page 12 and page 6, page 12 of the blue brief, page 6 of the gray brief, Lens.com cites two cases to try and support their position. They cite planetary motion case from the 11th circuit, and they cite the Planned Parenthood case, which I believe was, let's see, Southern District of New York. There's a great distinction you can make in these two cases. The Planned Parenthood case found that presence on the internet was a use in commerce, but it was for a service mark. The services Planned Parenthood provided, their internet website was enough to show use in commerce for a service mark. Then you go to planetary motion. That deals with a trademark for software as merchandise. The trademark was cool mail, and this is the use that was described. They posted the software on a Linux site that was called SunSite. Users could download the software to their computer. They accepted a license agreement on how they could use it, and there was a user's manual. So the user then had that software at his disposal. It was their software. And other companies do that, but if the consumer isn't making the decision, this is software from this source, I'm going to download it, then you're not providing software to the consumer as merchandise. One important distinction to make is Mr. DiGidio loves to talk about Google and eBay, and there's a reason why his briefing doesn't identify any specific registrations for Google and eBay in these examples, because Google and eBay do not have any registrations under Class 9 for software that apply simply to their website. The Google search engine website has a registration for services, but the specimens they submitted to the Patent and Trademark Office for their trademarks in Class 9 for software, Google, are specimens that show a download button. Do you want our Google Chrome application? Download here. For eBay, the specimen they submit for their Class 9 registration is for the eBay seller's assistant, an individual piece of software with a download button. Download here. Accept the terms and conditions. Now you have software that will enhance your experience on eBay. You have to have the consumer know that they are accepting software from that provider. Otherwise, you go into a retail store, you see their cash registers, they may have a really efficient system there, Wendy's, Barnes & Noble, anywhere, and you may think, boy, they've got a really great piece of software on their registers that processes these retail services really good, but that is not software as merchandise in commerce, that's software they're using to enhance the services they provide the public. That's the distinction. Lens.com provides online retail services. They may utilize software to enhance those services, but they don't provide the public with software that justifies a trademark in connection with software under Class 9. So for that reason, this court should affirm the board's cancellation of the Lens registration. Thank you. Thank you, Mr. Miller. Mr. DiGuglio, you have a little time. Your Honor, if I could make two points, please, which I think I can do in less than a minute. I'm going to try. We consistently hear about the consumers have to know that they're downloading software. The consumers have to be aware that they're downloading software. Otherwise, this just can't be software that can be trademarked. This was their case. They're the petitioners. If they want to say that's why this mark should be canceled, then they have the burden of proof on that point. But they didn't present any evidence that the consumers don't know this. The board didn't have any evidence that the consumers don't know this. In fact, we presented evidence that the consumers do know this. So if that is a good argument that the consumers need to know, then they lose on that because they presented no evidence whatsoever. They'll need to bring another action perhaps if they can and prove it then. But the board had no basis to make that decision if it is in fact relevant. Number two, I found it almost comical that the representative from 1-800-CONTACT said that lens.com must want this registration so they can beat up their competitors. Well, this is one of the actions that 1-800 has filed against my client, against other competitors in the industry. It began when 1-800 sued lens.com for some claims that they essentially lost already in the Second Circuit in the Wen-Yu case. That case was just decided in my client's favor after years and years of litigation in Utah, where lens.com resides. And we won virtually every single issue in that case against 1-800-CONTACT. And now we filed our motion for over a million dollars in attorney's fees. So if there's a bully here, it's certainly not lens.com. And now there's another lawsuit pending against lens.com this time for violation of antitrust laws. So, and I think the judge is right. It really doesn't matter what the reason is for our tactic of deciding we want this in our trademark arsenal or repertoire. And I don't care if Google wants one or not, we're entitled to get one, as are many companies already have. With that, I've got 20 seconds left, I guess, for anything else. Thank you, Mr. Newman. Thank you, Mr. Newman. The case is taken under submission. Thanks, Joe. The court is standing recess for.